IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILFREDO ARROYO, | : |
| Plaintiff | : |
| v. | : CIVIL NO. 3:CV-13-1506 |
| DOCTOR LI, ET AL., | : (Judge Conaboy) |
| Defendants | : |

_____

## MEMORANDUM
### Background

Wilfredo Arroyo, an inmate presently confined at the State Correctional Institution, Frackville Pennsylvania (SCI-Frackville) initiated this pro se civil rights action pursuant 40 42 U.S.C. § 1983. An Amended Complaint (Doc. 60) was subsequently filed.

By Memorandum and Order dated August 15, 2014, Defendants Sterling and Palmigiano's joint motion to dismiss was granted. An August 25, 2014 Memorandum and order denied a motion to dismiss by Defendant Psychiatrist Doctor Ingrid Li. The other remaining Defendant is SCI-Frackville Health Care Administrator V. Stanishefski. Presently pending is a motion to dismiss the Amended Complaint filed by Stanishefski. See Doc. 66.

According to the Amended Complaint, Plaintiff developed a "brain disabling" drug induced condition called tardive dyskinesia because of the Defendants' deliberate indifference.[1] Doc. 60 ¶ IV. Specifically, Arroyo states that Doctor Li ignored a prior diagnosis that the Plaintiff had tardive dyskinesia but admittedly

---

1. The symptoms of that condition include continuous muscle spasms of the neck, back, and shoulders.

1

did refer the inmate to the prison medical staff in order to rule out that condition.

PA Palmigiano and Doctor Sterling allegedly agreed with Doctor Li, and expressed the allegedly erroneous opinion that Plaintiff's tardive dyskinesia was concocted by the inmate or resulted from his previously diagnosed mental health problems. Arroyo asserts that filed a grievance with Health Care Administrator Stanishefski regarding his dissatisfaction with his care. The Amended Complaint also generally contends that the moving Defendant "interfered with medical orders and treatments." Doc. 60, p. 4, ¶ 6. In addition, Stanishefski allegedly put Plaintiff in a suicide watch cell, "because I could not walk because of severe pain on 3-5-11." Id.

After three (3) outside neurologists and four (4) other physicians diagnosed him with tardive dyskinesia Plaintiff purportedly underwent treatment with botox injections and medications.

## Discussion

Defendant Stanishefski claims entitlement to entry of dismissal on the grounds that: (1) the claims against her in her official capacity are barred by the Eleventh Amendment; (2) Plaintiff has not adequately alleged personal involvement by the moving Defendant; and (3) a viable claim of deliberate indifference has not been set forth. See Doc. 69, p. 4.

**Standard of Review**

As previously discussed by this Court's earlier rulings in this matter, Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of complaints that fail to state a claim upon which

2

relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)). A plaintiff must present facts that, if true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a)(stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary elements of the plaintiff's cause of action. Id. at 556.

A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Iqbal, 556 U.S. at 678. Legal conclusions must be supported by factual allegations and the complaint must state a plausible claim for relief. See id. at 679.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, at 555. The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562; see also Phillips v.

3

County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)(in order to survive a motion to dismiss, a plaintiff must allege in his complaint "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a particular cause of action). Additionally, pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972).

**Eleventh Amendment**

Defendant Stanishefski initially argues that any claim for money damages against her in her official capacity is barred by the Eleventh Amendment. See Doc. 69, p. 5.

The United States Supreme Court has ruled that a § 1983 action brought against a "State and its Board of Corrections is barred by the Eleventh Amendment unless [the State] has consented to the filing of such a suit." Alabama v. Pugh, 438 U.S. 781, 782 (1978). The Court of Appeals for the Third Circuit has similarly concluded that the Pennsylvania Board of Probation and Parole could not be sued because "it is not a 'person' within the meaning of Section 1983." Thompson v. Burke, 556 F.2d 231, 232 (3d Cir. 1977).

In Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), the Supreme Court reiterated its position that state agencies are not "persons" subject to liability in § 1983 actions brought in federal court. The Court noted that a § 1983 suit against a state official's office was "no different from a suit against the State itself." Id. at 71. "Will establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal or state court." Howlett v. Rose, 496 U.S. 356, 365 (1990); Walker v. Beard, 244 Fed. Appx. 439, 440 (3d Cir.

4

2007); see also A.W. v. Jersey City Public Schools, 341 F.3d 234, 238 (3d Cir. 2003).

Likewise, suits brought against state officials acting in their official capacities are to be treated as suits against the employing government agency. Will, 491 U.S. at 70-71; Garden State Elec. Inspection Serv. v. Levin, 144 Fed. Appx. 247, 251 (3d Cir. 2005). As such, Arroyo's damage claims brought against Defendant Stanishefski in her official capacity is considered to be against the state itself and are barred by the Eleventh Amendment.[2]

**Personal Involvement**

The second argument for dismissal contends that the Amended Complaint fails to allege any facts showing that Health Care Administrator Stanishefski was personally involved in any constitutional misconduct.

A plaintiff, in order to state an actionable § 1983 civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode

---

2. To the extent that Plaintiff is seeking injunctive relief against the Remaining Defendant in her official capacity, such a request is not barred by the Eleventh Amendment. See Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

5

v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Inmates also do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners Labor Union, 433 U.S. 119, 137-138 (1977); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.") Consequently, any attempt by Plaintiff to establish liability against the health care administrator solely based upon the substance or lack of response to his institutional grievances does not by itself support a constitutional due process claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison

officials' failure to comply with grievance procedure is not actionable).

Pursuant to the above discussion, any attempt by Plaintiff to establish liability against Stanishefski solely based upon her supervisory capacity as the prison's Health Care Administrator or based upon her handling of any administrative grievance filed by Arroyo is insufficient.

However, the allegations that Stanishefski interfered with medical orders and treatments and improperly put Plaintiff in a suicide watch cell[3] on March 5, 2011 do arguably satisfy the personal involvement requirement.

**Deliberate Indifference**

The final argument raised by the moving Defendant is that a viable claim of deliberate indifference has not been pled.

As previously discussed by this Court's August 15, 2014 Memorandum and Order, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  The relevant inquiry is whether the defendant was: (1)

---

3. In an opposing brief, Plaintiff indicates that he was in the suicide watch cell for a period of four (4) days. See Doc. 72, p. 4.

7

deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

This Court's August 15, 2014 Memorandum and Order concluded that Plaintiff's allegation that he has been diagnosed and treated for tardive dyskinesia was sufficient at this juncture in the proceedings to satisfy the serious medical need requirement. Stanishefski has not presented any facts or argument which would warrant a different conclusion. Accordingly, the serious medical need requirement will likewise be deemed satisfied for purposes of disposition of the pending motion to dismiss.

Under the subjective deliberate indifference component of Estelle, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician "has been negligent

8

in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

The Amended Complaint includes vague, conclusory claims that Stanishefski interfered with medical orders and treatments. Plaintiff clearly acknowledges that he was treated by multiple physicians during his incarceration. He also clearly asserts that there was a difference of opinion as to his diagnosis between those medical professionals who treated him. Arroyo also acknowledges that Doctor Sterling and PA Palmigiano performed a diagnostic evaluation as to whether the prisoner had tardive dyskinesia and thereafter treated him in accordance with that diagnosis. It is also noted that in his opposing brief, Plaintiff describes Stanishefski as being a nurse. See Doc. 72, p. 3.

There are no specific facts asserted which could support a claim that the moving Defendant deliberately delayed or denied any treatment prescribed by a treating physician or that there was a failure by the Health Care Administrator to provide said treatment motivated by any non-medical reason.  Moreover, the Amended Complaint acknowledges that Arroyo is now being provided with botox treatments and medications which have apparently been prescribed for his care by his current physician[s].  There is simply no factually supported claim that any prescribed treatment was denied or delayed for a non-medical reason.

Since the Amended Complaint acknowledges that Stanishefski acted in accordance with the directions of Plaintiff's then treating physicians, Doctors Li and Sterling, the subjective deliberate indifference component has not been satisfied with respect to the vague contentions of interference with medical orders and treatments.[4]

The final claim is that Stanishefski had Plaintiff put in a suicide watch cell for a four (4) day period because the prisoner could not walk.  The Amended Complaint does not include any facts to show that this placement was punitive.  Plaintiff's opposing brief suggests that this action was retaliatory, however, since there is no assertion of retaliation asserted against the moving Defendant in the Amended Complaint such a claim is not properly raised before this Court solely via its being mentioned in an opposing brief.

---

4.  However, if the pro se Plaintiff can present facts showing that Defendant  Stanishefski failed to provide or delayed prescribed treatment Plaintiff may file a reconsideration motion within fourteen (14) days of the date of this Memorandum.

10

However, given the liberal treatment afforded to pro se filing, the general assertion that because Plaintiff could not walk due to severe pain, Stanishefski had the inmate placed in a suicide watch cell could conceivably set forth a viable claim of deliberate indifference under Estelle.  Specifically, said contention arguably states that it was deliberate indifference to simply place Arroyo in an isolation cell as opposed to having him provided with an evaluation or treatment for his inability to walk.[5]  The motion to dismiss will be granted in part.  An appropriate Order will enter.[6]

S/Richard P. Conaboy\
RICHARD P. CONABOY\
United States District Judge

DATED: AUGUST 28, 2014

---

5. Of course, such a claim could be undermined if it is shown that this action was taken at the direction of Plaintiff's treating physician, or found to simply assert a claim of negligence if shown to have solely been an effort to closely monitor his physical condition.

6. The Court offers no opinion as to the merits of any negligence claim which Plaintiff may wish to pursue.

11